IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CIVITAF Corporation,<br><br>　　　　　Plaintiff(s),<br><br>　　v.<br><br>Federated Mutual Insurance Company, et al.,<br><br>　　　　　Defendant(s).<br>_____/ | NO. C 05-00595 JW<br><br>**ORDER DENYING MOTION TO DISMISS OR FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT** |

**I. INTRODUCTION**

This suit concerns defendant Federated Mutual Insurance Company's ("Federated" or "Defendant") alleged duty to defend plaintiff Civitaf Corporation ("Civitaf" or "Plaintiff"). Civitaf is a general contractor that allegedly performed defective work on a home and was sued in state court for breach of contract and negligence. Civitaf alleges that it was named as an "additional insured" under its subcontractor's insurance agreement with Federated, and that Federated, therefore, had a duty to defend it in the underlying state action. Federated refused to defend, and Civitaf filed this suit seeking declaratory relief and claiming breach of contract and bad faith refusal to defend. Federated filed this motion seeking, alternatively, dismissal, summary judgment, or partial summary judgment. Based upon all papers filed to date and the hearing conducted on April 11, 2004, Federated's motion is denied.

## II. BACKGROUND

The facts, as gathered from Civitaf's complaint, Amica Mutual Insurance Company's ("Amica") state complaint, and the insurance policy issued by Federated, are as follows. Civitaf is a general contractor that was responsible for improving a certain piece of residential property during the years 1999 and 2000. (Civitaf Compl. ¶¶ 1, 5; Amica Compl. ¶¶ 6, 7.) Civitaf hired subcontractors to perform various operations and activities, and required them to obtain insurance policies that named Civitaf as an additional insured. (Civitaf Compl. ¶ 6.) One subcontractor Civitaf hired was BMP Piping and Technology Co. ("BMP"). (Civitaf Compl. ¶ 11.) BMP procured an insurance policy from Federated that covered commercial general liability until November 2000. (Civitaf Compl. ¶ 11.) That policy insured not only BMP, but also "any . . . organization . . . for which [BMP] ha[s] agreed by written contract to procure . . . property damage liability insurance, arising out of operations performed by [BMP] or on [BMP's] behalf." (Federated Policy, CG-F-48 ¶ A.)

The Goldmans purchased the improved property in October 2000. (Amica Compl. ¶ 8.) Amica issued a homeowners' insurance policy to the Goldmans for the period of October 2001 thru October 2002. (Amica Compl. ¶ 12.) In September 2002, the Goldmans became aware of a plumbing leak at the property. (Amica Compl. ¶ 8) The leak was the result of a defectively installed waste line and a defectively constructed toilet. (Amica Compl. ¶ 9.) The leak contaminated the house and its walls with mold, and caused damages in an amount over $125,000. (Amica Compl. ¶¶ 10, 12.) Amica indemnified the Goldmans for the damages and sent a subrogation demand to Civitaf on May 22, 2003. (Amica Compl. ¶ 12; Civitaf Compl. ¶ 7.) On June 3, 2003, Civitaf tendered the subrogation demand to Federated for defense and coverage. (Civitaf Compl. ¶ 7.) On October 3, 2003, Federated denied any obligation to defend. (Civitaf Compl. ¶ 7.)

Amica filed suit against Civitaf in state court for breach of contract and negligence in March 2004. (Civitaf Compl. ¶ 5.) In response, Civitaf filed this suit against Federated in December 2004 for breach of contract, bad faith refusal to defend, and injunctive relief. The parties are scheduled to exchange their initial disclosures on or before June 6, 2005. (Plaintiff's Opp'n at 9.)

1  Federated filed this motion to dismiss or for summary judgment. The brief in support of the
2  motion is accompanied by a request for judicial notice and a declaration from Federated's claim
3  supervisor. Both contain extrinsic evidence. The request for judicial notice includes, <u>inter alia</u>, the
4  Amica complaint, and the declaration includes the insurance contract underlying both lawsuits.

### III.  STANDARDS

On a motion to dismiss, the Court has discretion either to consider or reject extrinsic evidence. <u>See</u>, <u>e.g.</u>, <u>MGIC Indem. Corp. v. Weisman</u>, 803 F.2d 500, 504 (9th Cir. 1986); <u>see</u> <u>also Skyberg v. United Food & Commercial Workers Int'l Union</u>, 5 F.3d 297, 302 (8th Cir. 1993);. Generally, if the Court chooses to consider extrinsic evidence, the motion to dismiss is converted into a motion for summary judgment. FED. R. CIV. P. 12(b). Conversion does not occur, however, in every case where extrinsic evidence is considered. <u>Fecht v. The Price Co.</u>, 70 F.3d 1078, 1080-81 (9th Cir. 1995) (stating that courts may take 'judicial notice' of documents referred to in a complaint without converting a motion to dismiss into a motion for summary judgment if neither party disputes the authenticity of those documents). Conversion is disfavored if "discovery is in its infancy and the nonmovant is limited in obtaining and submitting evidence to counter the motion." <u>Rubert-Torres v. Hospital San Pablo, Inc.</u>, 205 F.3d 472, 475 (1st Cir. 2000).

Here, discovery has not occurred yet and a motion for summary judgment is premature. <u>Rubert-Torres</u>, 205 F.3d at 475. Moreover, because the Court is only considering the insurance contract and the underlying state complaint, which are both referred to in Civitaf's complaint, the motion to dismiss will not be converted into a motion for summary judgment. <u>MGIC Indem. Corp.</u>, 803 F.2d at 504 (9th Cir. 1986). Therefore, the motion to dismiss standards will be applied.

In ruling on a motion to dismiss, the Court must accept all allegations of material fact as true and must construe those allegations in the light most favorable to the non-moving party. <u>Western Reserve Oil & Gas Co. v. New</u>, 765 F.2d 1428, 1430 (9th Cir. 1985). Any existing ambiguities must be resolved in favor of the pleading. <u>Walling v. Beverly Enterprises</u>, 476 F.2d 393, 396 (9th Cir. 1973). A Rule 12(b)(6) motion must not be granted "unless it appears beyond doubt that the plaintiff

3

1 can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson,

2 355 U.S. 41, 45-46 (1957). The Rule 12(b)(6) motion is viewed with disfavor and is rarely granted.

3 Gilligan v. Jamco Development Corp., 108 F.3d 246, 249 (9th Cir. 1997).

## IV. DISCUSSION

Civitaf's complaint alleges that Federated breached its contract and acted in bad faith by refusing to fulfill its duty to defend. (Civitaf Compl. ¶¶ 10-17.) Federated, however, argues dismissal of Civitaf's complaint is proper because Civitaf fails to allege facts sufficient to trigger the duty to defend. (Mot. to Dismiss at 7-15.)

**A. Civitaf Sufficiently States a Claim for Breach of Contract and Declaratory Judgment**

To state a claim for breach of contract, a complaint must allege: (1) the existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damage to the plaintiff. Walsh v. West Valley Mission, 66 Cal. App. 4th 1532, 1545 (1998). Under the terms of the Commercial General Liability Coverage contract at issue here, Federated has the "duty to defend [an] insured against any 'suit'" that seeks damages because of property damage which is covered by the insurance policy. (Federated Policy, CG 00 01 01 96 ¶ I.A1.a.) The duty to defend is expansive. Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 265 (1966) (stating that an insurer has a duty to defend any "suit which potentially seeks damages within the coverage of the policy") (emphasis in original). The insurer must defend if there is a "bare possibility" of coverage. Montrose Chem. Corp. v. Superior Court, 6 Cal. 4th 287, 300 (1993).

Civitaf makes several allegations in support of its breach of contract and declaratory relief claims. Civitaf alleges that Federated issued a Commercial General Liability Insurance policy to BMP Piping & Technology, Inc., and that Civitaf was an additional insured under the contract. (Civitaf Compl. ¶ 11.) Civitaf alleges that it fully performed its contractual obligations, but that Federated has not. (Civitaf Compl. ¶ 9.) Civitaf alleges that it is being sued for, inter alia, contamination caused by BMP (compare Civitaf Compl. ¶¶ 5, 12 with Amica Compl. ¶ 10), and that the suit meets the requirements necessary to invoke Federated's contractual duty to defend. (Federated

4

Policy, CG 00 01 01 96 ¶ I.A.1.a.) Civitaf alleges that Federated refused to provide a defense and that, as a result, it suffered damages by paying its own defense costs in the state lawsuit. (Civitaf Compl. ¶¶ 12-14.) Taking all these allegations in the light most favorable to Civitaf, <u>Western Reserve Oil & Gas Co.</u>, 765 F.2d at 1430, and considering the broad nature of the duty to defend, <u>Gary</u>, 65 Cal. 2d at 265, the Court finds that Civitaf sufficiently alleges all the elements necessary to state a claim for breach of contract and for declaratory relief based on Federated's refusal to defend. <u>Conley</u>, 355 U.S. at 45-46 (stating that dismissal is proper only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

Federated, however, advances three arguments for dismissal.

**1. The Complaint Sufficiently Alleges that Civitaf Was Insured Under the Ferderated-BMP Insurance Policy and that Civitaf's Liability Arose from BMP's Work**

Federated's first argument goes to the applicability of its policy and the scope of coverage. Federated argues that Civitaf does not allege facts sufficient to show that it was an insured under the BMP policy, or that the property damage at issue in the state suit arose out of BMP's operations. (Mot. to Dismiss at 10, 11.)

Under the Federated-BMP policy involved here, a third party general contractor is an "additional insured" only if the named insured (i.e., BMP) has "agreed by written contract to procure . . . property damage liability insurance, arising out of operations performed by [the named insured] or on [the named insured's] behalf." (Federated Policy, CG-F-48 ¶ A.)

Contrary to Federated's argument, Civitaf alleges facts sufficient to support its assertion that it was an additional insured under the policy. Civitaf alleges that it entered into a subcontract agreement with BMP that required BMP "to procure and maintain policies of commercial liability insurance, and to name [Civitaf] as an additional insured." (Civitaf Compl. ¶¶ 6, 11.) Because the Federated-BMP policy applies to those who BMP "agreed by written contract to procure" insurance (Federated Policy, CG-F-48 ¶ A), this allegation is sufficient to support Civitaf's assertion that it was named as an "additional insured on [the Federated-BMP] policy." (Civitaf Compl. ¶ 11)

*United States District Court*
*For the Northern District of California*

Likewise, even though Civitaf does not explicitly allege that its liability arose out of BMP's work, Civitaf's allegation on that issue passes muster under the Court's liberal notice pleading standard.  FED. R. CIV. P. 8(a) (requiring only "a short and plain statement of the claim showing that the pleader is entitled to relief").  Civitaf alleges that the "allegations in the [u]nderlying [a]ction triggered [Federated's] duty to defend." (Civitaf Compl. ¶ 12.)  However, when this allegation is read along with the allegations in the Amica Complaint and the terms of the Federated-BMP insurance policy, it is clear that Civitaf is alleging that its liability arose out of BMP's work.  The Amica Complaint alleges that "the waste line . . . had been defectively constructed . . . and that the toilet had been defectively installed."  (Amica Compl. ¶ 9.)  The Federated-BMP policy only covers liabilities that arise out of operations performed by BMP.  (Federated Policy, CG-F-48 ¶ A.)  Taken together, these allegations give Federated ample notice that Civitaf is claiming that its liability arises out of BMP's defective construction of the waste line and installation of the toilet.

**2. The Policy's Coverage Was Triggered**

Federated argues that the policy's coverage was not triggered for two reasons.  First, Federated argues that, under the policy, only damage to tangible property other than the subcontractor's own product is covered, yet Civitaf only alleges damage to BMP's own product (i.e. the pipes).  (Mot. to Dismiss at 11-12.)  Second, Federated argues that the duty to defend can be triggered only by property damage which occurs during the policy period, yet the alleged property damage must have occurred after the policy's expiration since it was not discovered until two years after BMP had worked on the property.  (Mot. to Dismiss at 11-12.)

The Commercial General Liability policy is triggered, along with the duty to defend, if "'property damage' occurs during the policy period."  (Federated Policy, CG 00 01 01 96 ¶ I.A.1.b.2.)  "Property damage," as defined in the policy, does not include damage to BMP's product.  (Federated Policy, CG 00 01 01 96 ¶ V.15); Maryland Cas. Co. v. Reeder, 221 Cal. App. 3d 961, 967 (1990) (explaining that liability policies are not designed to provide contractors with coverage against

6

claims that their work is defective because those problems are within the contractor's control). Rather, "property damage" is consequential injury to other tangible property.

Civitaf's Complaint sufficiently alleges that "property damage" occurred. Federated is correct in arguing that the mere existence of construction defects in the toilet or waste line does not constitute "property damage" and is, therefore, not insured under the general commercial liability policy, Maryland Cas. Co., 221 Cal. App. 3d at 967. However, the Complaint alleges contamination of the walls with mold and waste, which is property damage as contemplated under the policy. (Compare Civitaf Compl. ¶ 5 and Amica Compl. ¶¶ 9, 10.)

The argument that the property damage must have occurred after the policy expired is equally without merit. The Amica complaint only alleges that the damage was not discovered until September 2002. (Amica Compl. ¶ 8.) Nothing forecloses the possibility that the damage occurred prior to the policy's expiration in November 2000. If property damage occurred prior to the policy's expiration, the policy's coverage was triggered. Gray, 65 Cal. 2d at 265 (holding that an insurer "must defend a suit which potentially seeks damage within the coverage of the policy") (emphasis in original).

Because Civitaf may be entitled to relief, dismissal is improper. Conley, 355 U.S. at 45-46 (stating that dismissal is not proper unless the plaintiff can prove no set of facts that would entitle it to relief).

**3. The Property Damage Alleged in the Amica Complaint Did Not Fall Under an Exclusion from Coverage**

Third, Federated argues that even if the property damage at issue here met the general requirements for coverage, it nevertheless falls within either the "Products-Completed Operations" exclusion or the Damage to Property ("Ongoing Operations") exclusion. (Mot. to Dismiss at 12,13; Federated Policy, CG-F-48 ¶ D.2.) Taken together, Federated argues these two exclusions vitiate the duty to defend in all cases involving damage to the Goldman house, regardless of when the damage occurred. (Mot. to Dismiss at 13.)

The Products-Completed Operations exclusion excludes from coverage property damage arising from product or work that is already completed. (Federated Policy, CG 00 01 01 96 ¶ V.14.)

The Damage to Property exclusion excludes from coverage "'[p]roperty damage' to . . . [t]hat particular part of real property on which [a subcontractor is] performing operations, if the 'property damage' arises out of those operations." (Federated Policy, CG 00 01 01 96 ¶ I.2.j.)  In other words, this latter exclusion excludes from coverage certain types of property damage that arise from ongoing operations.  <u>Baroco West, Inc. v. Scottsdale Ins. Co.</u>, 110 Cal. App. 4th 96, 103-04 (2003).

The Products-Completed Operations exclusion does not necessarily exclude the property damage at issue in the underlying Amica lawsuit.  The Amica Complaint simply alleges that two years elapsed before the leak was discovered.  (Amica Compl. ¶ 8.)  It does not allege anything to pinpoint the precise date of property damage to a time after BMP completed its work.  Because the damage may have occurred before BMP's operations were completed, dismissal is improper.  <u>Compare</u> <u>Gray</u>, 65 Cal. 2d at 275 (stating that insurers are obligated to defend any "suit which <u>potentially</u> seeks damages within the coverage of the policy") (emphasis in original) <u>and</u> <u>Conley</u>, 355 U.S. at 45-46 (stating that a motion to dismiss must not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

Federated proffers an untenable interpretation of the Damage to Property exclusion.  While this exclusion may apply to damages caused by BMP's ongoing operations, it does not apply to the entire Goldman house.  (Federated Policy, CG 00 01 01 96 ¶ I.2.j (limiting the exclusion to damage to "that particular part of real property" on which BMP was currently working).)  Because the Amica and Civitaf complaints allege property damage to the house, without limiting the location (Amica Compl. ¶¶ 9, 10), the damage may not have occurred on "that particular part or real property on which" BMP was currently working.

The exclusions, therefore, do not necessarily apply and Civitaf's claim cannot be dismissed.

**B. Civitaf Sufficiently States a Bad Faith Refusal Claim**

Federated argues that Civitaf fails to state a claim for breach of the covenant of good faith and fair dealing.  (Mot. to Dismiss at 13-15.)

8

In order to establish a breach of the implied covenant of good faith and fair dealing under California law, a plaintiff must show: (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause. See Love v. Fire Ins. Exch., 221 Cal. App. 3d 1136, 1151 (2001).

Civitaf sufficiently alleges each element necessary to state a claim for bad faith refusal to defend. Civitaf alleges that Federated withheld a benefit due under the policy. The insurance policy created a duty to defend. (Federated Policy, CG 00 01 01 96 ¶ I.A.1.a.) Civitaf alleges that Federated breached this duty. (Civitaf Compl. ¶ 16.) Civitaf also alleges that Federated maliciously withheld this benefit unreasonably or without proper cause. (Civitaf Compl. ¶ 17.) As alleged in the Complaint, Federated gave no justification for its refusal to defend and did not even conduct an investigation. (Civitaf Compl. ¶¶ 7, 15-17.)

## V. CONCLUSION

For the foregoing reasons, Federated's motion is DENIED.

Dated: May 4, 2005         /s/James Ware
                            JAMES WARE
                            United States District Judge

9

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Christopher James Olson colson@smwb.com
Joseph Michael Sweeney jsween@smwb.com
Thomas H. Nienow tnienow@nielsenhaley.com

**Dated:  May 4, 2005**                                             **Richard W. Wieking, Clerk**

                                                                    **By:/s/JWchambers**
                                                                    **Ronald L. Davis**
                                                                    **Courtroom Deputy**